## THE CITY OF MACON.

(District Court, E. D. New York. February 6, 1900.)

COLLISION—STEAMER STRIKING GROUNDED VESSEL.

> The steamer City of Macon, passing down the Savannah river, struck and injured the Teviotdale, which was aground across the center of the channel, though with room to pass on either side. She had been aground for some time, and was known to be by those in charge of the Macon, who could see her for several miles back. On approaching, the Macon's signal was answered by a cross signal from the Teviotdale, from which the captain of the Macon concluded, as he testified, that she was in motion. *Held,* that there was no justification for such conclusion, the grounded vessel being in plain view, and that it did not relieve the Macon from the presumption of negligence arising from the collision.

In Admiralty. Suit against the steamship City of Macon to recover damages for collision.

Robinson, Biddle & Ward and Mr. Ward, for libelant.
Davies, Stone & Auerbach and Mr. Barry, for claimant.

THOMAS, District Judge. The City of Macon, a steamer drawing aft about 16 feet 6 inches of water, passing down the Savannah river, struck with her bow the port side of the Teviotdale, a steamer 350 feet long, 43 feet wide, and drawing aft 24 feet 6½ inches of water, which was aground across the channel of the river, which at that point is about 500 feet wide and extends eastwardly towards the sea. The accident happened on the 24th of April, 1899, at about 6:30 p. m., near the time of high water. The Teviotdale had been in plain view of those in charge of the Macon for several miles, and such persons had been fully aware that she was aground. The collision under

such circumstances with a stationary and helpless vessel must be attributed to the negligence of the Macon, unless some excusatory fact appears. Several circumstances have been suggested for the purpose of justifying the Macon, all of which have been attentively considered; but none of these require discussion, unless it be that the master of the Teviotdale gave a single whistle while the Macon was approaching.

To understand the force of the claimant's contention in this regard, the conditions at the time must more fully appear. There was sufficient space for the Macon, using proper care, to pass either under the bow or under the stern of the stranded vessel; but there was more ample way to the southward, where other vessels went while the steamer lay athwart the channel. When the Macon was a distance away, the master of the Teviotdale blew one whistle, and with his hand swung his cap towards the stern of the vessel, whereby he sought to indicate that the Macon should pass in that direction. The master of the Macon did not observe the waving of the hat, but he did hear the signal. Although he was within 300 feet of her, and although there was no visible movement of the Teviotdale, he concluded, he states, from her whistle, that she was in motion, and he reasoned that, being in motion, she had the right of way; that she stood in the relation of a navigating vessel; that, as the privileged vessel had crossed his signal, he must stop and reverse; and he contends that his attempt to do it disturbed his starboard wheel and caused the collision. The vice of this argument lies primarily in the statement that the one whistle changed a stranded vessel into a navigating vessel. She was aground. Any person on lookout on the Macon could see that she was aground, and did see that situation, and had seen it while approaching for several miles. The pretense that this status of rest was changed into a condition of motion, because the Teviotdale blew a whistle, is an attempt to create a nonexistent fact out of an inapplicable theory. A ship aground does not become a ship afloat from the mere fact that she makes a signal that might be appropriate for a moving vessel; nor may she be treated as a moving ship when it is obvious that she is fast aground. She was in tow of two tugs. They were at her starboard side, attempting to pull her eastward, and it was evident that she could not be moving forward. The propeller of the ship was not and had not been moving for some minutes. Which way did the Macon think the other vessel was moving? Astern? For what purpose did the Macon's master think that the one whistle had been sounded?

But consider the evidence of the captain of the Macon. He states that from some 300 to 500 feet away, on account of the conditions of the course, he was making directly for the Teviotdale, with a speed of from 4 to 6 miles per hour, and that he then gave two whistles to indicate his intention of passing under the Teviotdale's bow; that immediately the latter vessel gave one whistle, but that he did not at once stop and reverse, but was within 300 feet of the Teviotdale when he did so; that he was coming on the Teviotdale faster than he thought; that, if he had not inferred from the whistle that the

Teviotdale was afloat, he would not have come on her as fast as he did; that it was necessary, on account of the narrow waterway, to get near to the Teviotdale before he could starboard across her bows. It is quite obvious, from all this, that the captain of the Macon approached near to the location of the ship stranded across his course at a speed which precluded the stopping of his steamer, and that he did not signal until quite near to her, and that when his signal was crossed he did not try at once to stop his vessel. Of the 500 feet of channel, 350 feet were occupied by the ship aground, and yet the Macon's speed was such that it could not be arrested before the collision. Apparently the Macon's negligence preceded, as well as succeeded, the single whistle. She should have been under such control as would enable her to meet the exigencies that might arise when the place of passing should be reached.

It is probable that the Teviotdale's single whistle had no influence upon the result. In his report to the inspectors the captain of the Macon makes no mention of such whistle, or any whistle, but ascribes the accident to a momentary grounding of his vessel, which disturbed the steering thereof. Moreover, there is much evidence, some of it appearing in the claimant's case, that the signals were interchanged when the vessels were so far apart as to permit any action undertaken with care and skill by the master of the Macon. Whether such evidence preponderates it is unnecessary to decide. It is sufficient that the Macon's captain did not try to stop his vessel at once upon hearing the one whistle, and made no mention of it when he made his report. This is clear evidence that the whistle had no influence upon him, and that he did not try to stop and reverse on that account, nor until he had come so near that he saw that the collision was imminent. Even if it should be concluded that the Macon took ground upon a lump, and that her steering was disturbed thereby, of which there is vague and unsatisfactory evidence, the fact remains that the undue speed of the approaching vessel was the proximate cause of the accident.

The libelant should have a decree, with costs.